UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RICK D. LAWRENCE, | § | Case No. 05-32975-H1-7 |
| | § | Chapter 7 |
| Debtor. | § | |
| | § | |

_____

| | | |
|---|---|---|
| CADLEWAY PROPERTIES, INC. | § | |
| | § | |
| v. | § | |
| | § | ADVERSARIAL NO. 05-3342 |
| RICK D. LAWRENCE, | § | |
| XXTREME PIPE SERVICES, LLC, | § | |
| XXTREME TRUCKING, LLC, AND | § | |
| XXTREME PIPE STORAGE, LLC | § | |

**DEFENDANTS' XXTREME PIPE SERVICES, LLC, XXTREME TRUCKING, LLC, AND XXTREME PIPE STORAGE, LLC'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE KAREN K. BROWN, UNITED STATES BANKRUPTCY JUDGE:

Defendants Xxtreme Pipe Services, L.L.C., Xxtreme Trucking, L.L.C., and Xxtreme Pipe Storage, L.L.C. ("Defendants") hereby file this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and pursuant to Federal Rule of Bankruptcy Procedure 7056. In support thereof, Defendants would respectfully show unto the Court the following:

### A. SUMMARY OF THE ARGUMENT

Plaintiff Cadleway Properties, Inc. ("Plaintiff") has filed the present lawsuit in order to deny Defendant Rick D. Lawrence ("Lawrence") discharge under the Bankruptcy Code. Pl.'s First Am. Compl. Objecting to the Discharge of Debtor and for Declaratory J. Regarding Certain Assets, ¶¶ 13-19 (Dkt. #16). Moreover, Plaintiff seeks a determination of its rights to certain assets transferred from American Pipe Inspection Company I, Ltd., to Xxtreme Pipe Services,

1

L.L.C. ("Xxtreme Pipe Services") pursuant to the Agreement to Purchase Assets. *Id.*, ¶ 19. Plaintiff also contends that Defendants collected approximately $200,000 in receivables owed to Lawrence's prior companies: Five Star Transportation, L.P., Birdwell Pipe, L.P., Birdwell GP, L.L.C., Birdwell Partners, and American Pipe Inspection Company I, Ltd. *Id.*, ¶ 18. There is, however, a noticeable dearth of evidence underlying Plaintiff's claims. Accordingly, summary judgment is appropriate. *E.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Despite the passage of time, Plaintiff has not presented evidence or proof demonstrating that Defendants collected any receivables owed to Lawrence's prior companies. Nor has Plaintiff shown that it has valid lien rights in any of the assets that Xxtreme Pipe Services received from American Pipe Inspection Company I, Ltd. Therefore, the Court should dismiss these claims with prejudice and dismiss Defendants from this lawsuit.

## B. BACKGROUND

Lawrence owned a 28% interest in Five Star Transportation, LP, Birdwell Pipe, L.P., Birdwell GP, L.L.C., Birdwell Partners, and American Pipe Inspection Company I, Ltd. ("the Birdwell companies"). He previously served as co-managing partner of Birdwell Partners, a holding company for these entities. Each of these companies was involved in the pipe inspection and oilfield trucking businesses. These companies borrowed more than two million dollars for working capital and financing from Merrill Lynch Business Financial Services, Inc. ("Merrill Lynch"), Southwest Bank of Texas ("Southwest"), HSBC Financial ("HSBC"), and Comerica. The business fortunes of these companies, however, took a turn for the worse during 2003. By September 2003, the Birdwell companies were in severe financial trouble.

Following negotiations, American Pipe Inspection Company I, Ltd. sold various assets to Xxtreme Pipe Services. Exhibit A: Agreement to Purchase Assets at 1-9. Based on this

agreement, Xxtreme Pipe Services agreed to assume certain debts owed by American Pipe Inspection Company I, Ltd. to various banks. *Id.*, Ex. B. The Agreement to Purchase Assets was executed on October 1, 2003. *Id.* at 9. In turn, Rick Lawrence & Associates was issued ten Membership Interest Units in Xxtreme Pipe Services. *See* Exhibit B: Option to Purchase at 1-7.

On November 7, 2001, Merrill Lynch and Five Star Transportation entered into a loan agreement whereby Merrill Lynch provided a commercial line of credit to Five Star Transportation. Exhibit C at 1-11. This loan was secured by Five Star Transportation's assignment to Merrill Lynch of first liens and security interests in Five Star Transportation's collateral. *Id.* at 7. The parties defined the term "collateral" to include, among other things, all accounts, financial assets, inventory, equipment, and fixtures. *Id.* at 1.

Five Star Transportation and Merrill Lynch signed a term loan agreement on November 12, 2002. Exhibit D at 1-10. The goal of this agreement was to pay down part of Five Star Transportation's debt. As before, this term loan was secured by Five Star Transportation's assignment to Merrill Lynch of first liens and security interests in Five Star Transportation's collateral. *Id.* at 5. The parties defined the term "collateral" to include, among other things, all accounts, financial assets, inventory, equipment, and fixtures. *Id.* at 1. In the event of a default by Five Star Transportation, Merrill Lynch retained the right to collect and possess all collateral. *Id.* at 6-7. Merrill Lynch did not, however, have a lien on any other entity or its assets. Specifically, Merrill Lynch did not have a lien on any assets owned by American Pipe Inspection Company I, Ltd.

In 2004, Merrill Lynch filed a lawsuit against Lawrence, his co-managing partner, John P. Boylan, Birdwell Pipe, L.P., Birdwell GP, L.L.C., Birdwell Partners, and American Pipe Inspection Company I, Ltd. to recover on its loan ("the state court lawsuit"). Lawrence did not

3

contest the debts. The state court appointed Charles M. Silverman as the receiver on May 10, 2004 to oversee Merrill Lynch's lien on Five Star Transportation's receivables and assets. Exhibit E. Mr. Silverman was discharged as receiver on November 29, 2004. Exhibit F. He issued his final report two weeks later. Exhibit G: Final Report of State Court Receiver at 1-4.

In his report, Mr. Silverman concluded that the receivables owed to Five Star Transportation had long since been dispersed. *Id*. at 4. Additionally, Mr. Silverman concluded that "there are no known assets or proceeds available for the benefit of [Merrill Lynch]." *Id*. Based on a substantial review of documents and based on his thorough investigation, Mr. Silverman confirmed that Lawrence's representations regarding the Five Star Transportation receivables were accurate and asked that the state court terminate the receivership. *Id*.

Merrill Lynch eventually obtained a judgment exceeding one million dollars, and sold that judgment and its underlying paper to Plaintiff. Exhibit H. Plaintiff, in turn, initiated the present lawsuit.

Plaintiff's claims against Defendants are two-fold. Pl.'s First Am. Compl., ¶¶ 18-19. First, Plaintiff contends that Defendants diverted, "in whole or in part," the $200,000 in receivables owed to the Birdwell companies. *Id*., ¶ 18. Because these receivables are subject to the lien established by the financing agreements underlying Merrill Lynch's judgment, Plaintiff contends that these receivables are its property. *Id*. Consequently, Plaintiff seeks a declaratory judgment that Defendants collected some or all of these receivables. *Id*.

Second, Plaintiff contends it has a lien on assets transferred from American Pipe Inspection Company I, Ltd. to Xxtreme Pipe Services. *Id*., ¶ 19. According to Plaintiff, these assets were transferred without the consent of Cadleway. *Id*. Therefore, Plaintiff asks the Court to determine its lien rights "against the property and assets which were transferred from

4

American Pipe Services Company I, Ltd., to Xxtreme Pipe Services, LLC pursuant to the Agreement to Purchase Assets." *Id.*

### C. ARGUMENTS AND AUTHORITIES

#### 1. LEGAL STANDARD

A movant is entitled to summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Issues of material fact are genuine only if they require resolution by a trier of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323; *see also* FED. R. CIV. P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *see also Wise v. E.I. DuPont De Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).

To meet this burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "coming forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 586-87 (quoting FED. R. CIV. P. 56(e)). Summary judgment should be granted only if the evidence indicates that a reasonable fact-finder could not find in favor of the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita*, 475 U.S. at 587.

## 2. ANALYSIS

### a. Plaintiff Has Not Presented Evidence Demonstrating that Defendants Collected Any Receivables Owed to Lawrence's Prior Companies.

Plaintiff alleges that Defendants collected approximately $200,000 in receivables that belonged to Lawrence's Prior Companies. Pl.'s First Am. Compl., ¶¶ 18. In particular, Plaintiff has focused on outstanding receivables to Five Star Transportation that Defendants purportedly collected. The record in this lawsuit, however, proves otherwise.

Five Star Transportation formerly operated at 7814 Miller Road, Houston, Texas 77049. It leased this real property from LandStar Investments, L.L.C. ("Landstar"). Due to various economic difficulties, Five Star Transportation went out of business. At that time, Xxtreme Pipe Storage, LLC initially leased and then purchased the land that Five Star Transportation had previously leased from LandStar. The date of the Real Estate Sales Contract with Landstar is October 14, 2003. *See* Exhibit I: Real Estate Sales Contract at 1-12. Xxtreme Pipe Storage, LLC closed on the purchase of the real property on April 29, 2004. *See id.*

None of the Xxtreme entities collected any receivables owed to Lawrence's Prior Companies. Indeed, the Xxtreme entities *did not exist* before September 2003. *See* Exhibit J: Excerpts of Deposition Testimony of Steve Turner at 17:14-24, 18:3-8. However, to the extent that the Xxtreme entities have received any money from former customers of Five Star Transportation, this was for pipe storage services after Xxtreme Pipe Storage acquired the real estate formerly leased by Five Star Transportation. *See id.* at 19:7-20:1.

Additionally, the deposition testimony in the state court lawsuit reveals that Defendants did not collect any receivables owed to Lawrence's Prior Companies. Lawrence was deposed in

the state court lawsuit on April 20, 2004.[1]  When asked if he had given the right to collect Five Star Transportation's receivables to Xxtreme Pipe Services, Lawrence gave the following answer under oath: "Not at all."  *See* Exhibit K: Deposition Transcript of Rick Lawrence in state court lawsuit at 21:12.  Lawrence adamantly denied that Defendants have collected any Five Star Transportation receivables, *see id*. at 22:13-15, stated he was certain that Defendants had not collected any of those receivables, *see id*. at 67:16-21, and informed counsel for Merrill Lynch that "none of this money is going to Xxtreme Pipe."  *Id.* at 68:7-8.

Similarly, Jimmy Dan Elzner was deposed in the state court lawsuit as the corporate representative of Defendants.  At the time, Mr. Elzner served as a manager for Defendants.  When directly asked whether Defendants have collected any of the receivables owed to Five Star Transportation, Mr. Elzner testified that Defendants have never done so.  *See* Exhibit L: Deposition Transcript of Jimmy Dan Elzner in state court lawsuit at 28:7-19.

Plaintiff is quite familiar with the financial condition of Five Star Transportation.  At Merrill Lynch's request, the state court appointed a receiver in order to protect Merrill Lynch's interest in the property that Five Star Transportation had pledged as collateral.  *See* Exhibit M: Plaintiff's Motion to Appoint Receiver at 1-9.  Notably, in the motion to appoint receiver, Merrill Lynch hinted that Xxtreme Pipe had collected receivables owed to Five Star Transportation.  *Id*. at 5.  Merrill Lynch also contended that Xxtreme Pipe had gained assets formerly owned by Five Star Transportation "without assuming Five Star's obligations to Merrill Lynch."  *Id*. at 7.

---

[1] Plaintiff could well contend that prior deposition testimony in the state court lawsuit is inadmissible because it is hearsay.  Such an argument, however, does not withstand scrutiny.  Federal Rule of Evidence 804(b)(1) states that deposition testimony in a prior proceeding involving a "predecessor in interest" is admissible.  FED. R. EVID. 804(b)(1).  Because Merrill Lynch sold its judgment in the state court lawsuit to Plaintiff, Merrill Lynch is a "predecessor in interest."  *See, e.g.*, *Battle v. Mem'l Hosp*., 228 F.3d 544, 552-53 (5th Cir. 2000).  Therefore, Rule 804(b)(1) applies and deposition testimony in the state court lawsuit is admissible.

Charles M. Silverman was appointed as receiver of Five Star Transportation. Mr. Silverman utilized the services of Robb Evans & Associates, L.L.C. ("Robb Evans") in order to perform his services as receiver. *See* Exhibit G at 1. On May 19, 2004, a representative from Robb Evans visited with Steve Turner, President of Xxtreme Pipe Storage, L.L.C. *Id.* at 2. Mr. Turner informed the representative that Xxtreme Pipe Storage, L.L.C. had purchased the land where Five Star Transportation operated from Landstar, Five Star Transportation's former landlord. *Id.* Notably, as the receiver stated in his final report, "[a]ll of the racks used to hold the pipe and various other personal property were part of the purchase." *Id.*

When asked whether the Xxtreme entities had collected any receivables owed to Five Start Transportation, Mr. Turner denied that the Xxtreme entities had collected or utilized those receivables. *Id.* at 2, 4. Further, Lawrence informed the receiver that "all assets [of Five Star Transportation] have now been liquidated, the proceeds spent, and there are no known assets or proceeds available for the benefit of [Merrill Lynch]." *Id.* at 4. After he completed his investigation, Mr. Silverman filed his final report. *Id.* at 1-4. He was eventually discharged by the state court. Exhibit F.

The receiver's report in the state court lawsuit further demonstrates that Defendants had no role in, and did not engage in, collecting any receivables due to Five Star Transportation. This conclusion is further supported by the sworn deposition testimony of Lawrence and Jimmy Dan Elzner in the state court lawsuit. Appropriately, the evidence and deposition testimony in the underlying lawsuit prove that Plaintiff's claims in this lawsuit lack merit.

More recently, however, Steve Turner testified as the corporate representative of Defendants. Mr. Turner adamantly denied that any of the Xxtreme entities improperly collected receivables owed to Lawrence's Prior Companies. *See* Exhibit J at 19:7-10. Mr. Turner then

8

thoroughly discussed precisely why the improper collection of receivables did not occur. *Id.* at 19:12-20:1. Among other reasons, receivables owed to Five Star Transportation were going into a lockbox at Southwest Bank. *Id.* at 19:12-14. None of the Xxtreme defendants have ever utilized the services of Southwest Bank. *Id.* at 38:14-20. Nor has Plaintiff presented any evidence in support of this claim. If anything, the record before the Court thoroughly demonstrates to the contrary. *Id.* at 19:7:20:1.[2]

Defendants have identified the evidentiary deficiencies underlying this claim. Under Rule 56(c), the burden shifts to Plaintiff to designate specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 323; *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 194 (5th Cir. 2005) (affirming the district court's granting of summary judgment). Defendants respectfully submit that Plaintiff has not met this burden. Therefore, the Court should grant summary judgment on this claim and dismiss it with prejudice.[3]

### b. **Plaintiff Has Not Shown that It Has Valid Lien Rights in the Property and Assets that Were Transferred Pursuant to the Agreement to Purchase Assets.**

Plaintiff has asked the Court to determine the extent of its lien rights against the property and assets which were transferred from American Pipe Inspection Company I, Ltd. to Xxtreme Pipe Services, L.L.C. pursuant to an Agreement to Purchase Assets. Pl.'s First Am. Compl., ¶ 19. This question, however, is easily resolved. Plaintiff does not have lien rights in the property

---

[2] A copy of the transcript of Mr. Turner's deposition is included with this motion. It is worth noting that James Wilkinson and John Boylan have both testified that they have no personal knowledge regarding whom—if anyone—has collected any alleged receivables owed to Lawrence's prior companies. *See* Exhibit N: Excerpts of Deposition of James R. Wilkinson at 85:14-86:2; Exhibit O: Excerpts of Deposition of John P. Boylan at 68:9-69:2.

[3] Plaintiff filed this lawsuit on May 9, 2005. The parties have conducted substantial discovery since that time and multiple witnesses have been deposed. Therefore, "no serious claim can be made that [Plaintiff is] in any sense 'railroaded'" by this motion." *Celotex Corp.*, 477 U.S. at 326.

transferred under the Agreement to Purchase Assets. Plaintiff's lien rights are against the assets of Five Star Transportation, not American Pipe Inspection Company I, Ltd. *See* Exhibit P: UCC Filing Statements dated December 3, 2001 at 1-4; Exhibit Q: UCC Filing Statement dated August 9, 2004 at 1-2.[4]

Although Plaintiff mentions it in passing, it is clear beyond peradventure that the only parties to the Agreement to Purchase Assets were American Pipe Inspection Company I, Ltd. and Xxtreme Pipe Services. *See* Exhibit A at 1. Both parties to this agreement signed and executed it on October 1, 2003. *Id.* In consideration of ten dollars, American Pipe Inspection Company I, Ltd. agreed to sell more than several assets to Xxtreme Pipe Services. *Id.*, Ex. A, p. 10.[5] Five Star Transportation was not a party to this agreement; it did not convey assets of Five Star Transportation to Xxtreme Pipe Services. *See id.*

Further, Xxtreme Pipe Services agreed to assume certain debts owed by American Pipe Inspection Company I, Ltd. and by Five Star Transportation. *Id.*, Ex. B., p. 11. None of these debts, however, were owed to Plaintiff. *See id.* Nor has Plaintiff contended otherwise.

The only asset that Plaintiff could conceivably contend Five Star Transportation owned is a John Deere 624 forklift. *See id.* However, as Mr. Turner testified, Xxtreme Pipe Services

---

[4] To be sure, American Pipe Inspection Company I, Ltd. was a guarantor on the loan and security agreement between Merrill Lynch and Five Star Transportation. *See* Exhibit R: Unconditional Guaranty at 1-2. Yet the only property that American Pipe Inspection Company I, Ltd. assigned as collateral was all property "which is in transit to or in the possession, custody or control" of Merrill Lynch. *Id.* at 1. Plaintiff has neither shown nor contended that the assets American Pipe Inspection Company I, Ltd. sold to Xxtreme Pipe Services were in transit or in the possession, custody or control of Merrill Lynch.

[5] One must note that the title of Exhibit A to the Agreement to Purchase Assets is "American Pipe Inspection Equipment List." *Id.* As Lawrence testified in the state court lawsuit, the Agreement to Purchase Assets only dealt with American Pipe Inspection and didn't say anything about Five Star Transportation. *See* Exhibit K at 76:15-22.

10

purchased a John Deere 624 forklift from American Pipe Inspection Company I, Ltd., not from Five Star Transportation. *See* Exhibit J at 31:9-11.[6]

Even though this lawsuit has been on file for more than nine months, Plaintiff has not tendered probative evidence supporting a claim for lien rights on any of the transferred assets, much less this particular asset. Plaintiff, in short, has failed to meet its burden under Rule 56(c) and *Celotex* to show that there is a genuine issue for trial. Therefore, the absence of evidence mandates a finding that this claim should be absent from this lawsuit. *See Condrey*, 431 F.3d at 194.

### D.  CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants Xxtreme Pipe Services, LLC, Xxtreme Trucking, LLC, and Xxtreme Pipe Storage, LLC pray that the Court grant this Motion for Summary Judgment. Defendants further pray for any such additional relief, either at law or in equity, to which they may be justly entitled.

---

[6] The date of the final judgment in the state court lawsuit is December 7, 2004. *See* Exhibit H at 2. Thus, American Pipe Inspection Company I, Ltd. and Xxtreme Pipe Services executed the Agreement to Purchase Assets more than a year before judgment in the state court lawsuit. Exhibit A at 9. Additionally, American Pipe Inspection Company I, Ltd. and Xxtreme Pipe Services executed the Agreement to Purchase Assets long before Plaintiff could have acquired any lien rights concerning the transferred assets. *Compare id.*, *with* Exhibit H at 2.

Respectfully submitted,

**HAYS, McCONN, RICE & PICKERING**


By:  /s/ Michael M. Gallagher w/permission
      Mark A. Padon
      State Bar No. 15406300
      Southern District of Texas No. 3295
      400 Two Allen Center
      1200 Smith Street
      Houston, Texas 77002
      Telephone: (713) 654-1111
      Facsimile: (713) 650-0027
      Email: mpadon@haysmcconn.com

**ATTORNEY-IN-CHARGE FOR DEFENDANTS XXTREME PIPE SERVICES, LLC, XXTREME TRUCKING, LLC, AND XXTREME PIPE STORAGE, LLC**

**OF COUNSEL:**

**HAYS, McCONN, RICE & PICKERING**
Michael M. Gallagher
State Bar No. 24040941
Southern District of Texas No. 560357
400 Two Allen Center
1200 Smith Street
Houston, Texas 77002
Telephone: (713) 654-1111
Facsimile: (713) 650-0027
Email: mgallagher@haysmcconn.com

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the above and foregoing instrument has been duly sent via CM/ECF and/or certified mail, return receipt requested to all counsel of record on this the seventeenth day of March, 2006, as follows:

Mr. Mark A. Kerstein
Buck, Keenan, Gage, Little & Lindley, L.L.P.
700 Louisiana, Suite 5100
Houston, Texas 77002

Mr. Keavin D. McDonald
Wilshire, Scott & Dyer, P.C.
1221 McKinney, Suite 3000
Houston, Texas 77010

William G. West, Trustee
12345 Jones Road
Houston, Texas 77070

Marc H. Schneider
Deirdre Casey Brown
Waldron & Schneider, LLP
15150 Middlebrook Drive
Houston, Texas 77058

                                                      /s/ Michael M. Gallagher
                                                      Michael M. Gallagher